In re the MARRIAGE OF Janice E. STANLEY and Steven Lee Stanley.

Upon the Petition of Janice E. Stanley, Petitioner-Appellee,

And Concerning Steven Lee Stanley, Respondent-Appellant.

No. 85–846.

Court of Appeals of Iowa.

June 24, 1987.

Ray Sullins, Des Moines, for respondent-appellant.

Robert H. Laden and Ted E. Breckenfelder of Hyland, Laden & Pearson, Des Moines, for petitioner-appellee.

Considered by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Respondent, Steven Stanley, appeals the trial court's ruling on his and petitioner's applications for modification of a dissolution decree. We affirm.

Janice and Steven were married in 1979, had a child in 1980, and divorced in 1982. In the decree of dissolution, sole custody of the child was awarded to Janice. Steven was ordered to pay $25 a week child support. On August 20, 1984, Janice filed an application for modification of the decree, asking for an increase in child support payments. On October 23, 1984, Steven filed a cross-application for modification asking for physical care of the child. At pretrial conference Steven raised the issue of joint legal custody. After a trial on all the issues, the trial court entered its order on

May 22, 1985. Steven was ordered to increase his child support payments to $60 per week. No custody modification was made. The reports, findings, and conclusions of a court-appointed investigator of the child custody issue were adopted and incorporated with the court's order. Attorney fees were awarded to petitioner Janice. Costs were assessed to Steven. Steven has appealed the trial court's ruling.

Our scope of review is de novo. Iowa R.App.P. 4. In equity cases, especially when considering the credibility of witnesses, we give weight to the factual findings of the trial court but we are not bound by them. Iowa R.App.P 14(f)(7). The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983).

## I.

Steven first contends that the trial court erred in refusing to grant joint custody of the minor child. Steven asserts that the trial court was required to find by clear and convincing evidence that joint custody was inappropriate before it could deny the modification for joint custody. Janice responds that to change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree have so substantially changed that the requested change is in the child's best interest.

■ In considering a modification of the initial award of custody, the court looks for a material and substantial change in circumstances. *In re Marriage of Dethrow*, 357 N.W.2d 44, 45 (Iowa App.1984). In *Dethrow* we addressed the issue of burden of proof on a petition to change sole custody to joint custody in a case where the initial decree was rendered in 1981. (The decree in the instant case was rendered February 10, 1982.) In *Dethrow*, we said:

> The legislature has amended section 598.-41 of the Iowa Code by adding a new subsection. The amendment states:

> Sec. 6. The *enactment* of subsection 1 of section 598.41 *constitutes a substantial change in circumstances* authorizing a court to modify a child custody order pursuant to section 598.21 and chapter 598A.

Acts of 1984, Ch. 1088, § 6; 1984 Legis. Serv. No. 3 at 44 (West) (emphasis added). Iowa Code section 598.41 was enacted and went into effect in 1982, after the initial custody decree was rendered in 1981, and before the modification decree was rendered in 1983. We therefore conclude that there was a substantial change in circumstances which could justify modifying the initial decree.

The legislature has also amended section 598.41(2). This amended section now requires that any refusal to award joint custody be justified by "cite[d] clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and parent should be severed." 1984 Legis.Serv. No. 3 at 43 (West).

Our opinion in *Dethrow* established the following:

1. The change in the statute is a change of circumstances in itself.

2. To deny joint custody the court must be convinced there is clear and convincing evidence joint custody is unreasonable and not in the best interest of the children.

*Id.* at 46.

■ The trial court said, in its ruling in this case, there was no material change in circumstances since the date of the decree which could permit a modification of the custody provisions of the original decree. Recognizing that the enactment of the aforementioned statute itself constituted a substantial change in circumstances, we believe the court's findings adequately illustrate that clear and convincing evidence exists that joint custody would be unreasonable and not in the best interests of the child. The court found that the mother had a live-in boyfriend but no evidence was provided that this relationship

had any negative impact on the child. The court found that the visitation problems were most likely the fault of the father's. The court found no poor treatment of the child stemming from alleged misuse of caffeine and excessive cigarette smoking by the mother. The court found that the mother's working hours were better for maximum parent-child contact than the father's. The court considered the fact that the child had enjoyed the present arrangement for two years and a change would be disruptive. Primarily, though, the court, after hearing all the witnesses and weighing their testimony, concluded that there continued to be a lack of cooperation between the parents, that the parents would not admit this to themselves, and that the cooperation problem was deeply rooted in the prior relationship between the parties. The continued inability or unwillingness of parents to cooperate is a factor in determining if a custody modification is appropriate. *In re Marriage of Krebsbach*, 395 N.W.2d 189, 191 (Iowa App.1986). Based on these considerations, the court refused to modify the original decree so as to provide joint custody with the father. In our de novo review, we have examined the testimony presented at trial and we are convinced that there is clear and convincing evidence that joint custody is untenable and not in the best interests of the child. Too many potential problems lurk in the continued inability of the parties to cooperate in visitation matters. The child custody investigator, who recommended that custody not be changed, testified:

> Communication between Janice and Steven now is extremely succinct and if it does occur it's often in an arguing tone, accusing tones, blaming tones and that obviously is not a healthy environment, and I cannot foresee everyone just turning around and behaving and communicating differently after today. It's something that could possibly occur if adults are willing to place some of their needs aside and act in a mature and wise manner.
>
> Q. Do you feel if the Court were to grant joint legal custody to Mr. Stanley that he in fact would use this as a further tool against Mrs. Stanley? A. I think it would create a most difficult situation.
>
> Q. I guess what I'm talking about, Mrs. Tiffany, do you feel he would use it as a method of further harassment, further controlling, further involvement to a greater extent with Mrs. Stanley and not necessarily the child? A. Based on the past history of this case I would have to say yes.

We conclude here as we did in *In re Marriage of Butler*, 346 N.W.2d 45, 46 (Iowa App.1984), that joint custody is not appropriate in view of the problems the parties have had communicating and the existence of doubts as to the parties' ability to support each other's relationship with the child. *See also In re Marriage of Miller*, 390 N.W.2d 596, 601–02 (Iowa 1986); *In re Marriage of Fish*, 350 N.W.2d 226, 229–30 (Iowa App.1984).

We do note that the father in one instance was so concerned with the child's speech that the father took the child to be evaluated for this problem by a speech disability agency. The father is to be commended for this. We do not believe the record is convincing that the mother discouraged such evaluation nor that the mother was unconcerned with the problem. This affirmative act on the part of the father does not in itself persuade us that joint custody should be granted.

## II.

█ The trial court ordered Steven to increase his child support payment to $60 per week. The court specified that the support would be paid from the date of the filing for the petition of modification, which was August 20, 1984. Steven does not argue that the amount ordered is inappropriate. He does argue that payment should not be retrospective but only prospective from the date of the decree, May 22, 1985. Janice contends that the trial court is entitled to make the increase in support retroactive.

It is true that modification of a decree for support payments operates prospectively and not retrospectively. *In re Marriage*

*of Stutsman,* 311 N.W.2d 73, 76 (Iowa 1981); *Gilliam v. Gilliam,* 258 N.W.2d 155, 156 (Iowa 1977). In *Willcox v. Bradrick,* 319 N.W.2d 216, 219 (Iowa 1982), the court held that payments could be required from the time of the filing of the modification decree since the right to modification dates from the application for the modification. The trial court has the discretion to decide if payments will begin from the filing date or from the date of the modification order. *See In re Marriage of Hayne,* 334 N.W.2d 347, 352 (Iowa App.1983). Steven has made no showing on appeal that the court abused its discretion in increasing child support payments from the time of the filing of the modification for support payments. We affirm its order that the increase in support payments is due from the date of Janice's filing for modification.

### III.

The trial court ordered that Steven pay $4,000 towards Janice's attorney fees. On appeal, Steven claims the trial court abused its discretion in making this award. At first blush, this amount looks to excessively favor the petitioner. It appears that given the number of hours put into the case by petitioner's attorney, respondent is being required to pay almost the entire amount. We do not think, however, after examining all the relevant circumstances, that the trial court abused its discretion in this matter.

■ Attorney fees are not recoverable as a matter of right but rest within the court's discretion and depend upon one spouse's ability to satisfy them. *In re Marriage of Phipps,* 379 N.W.2d 26, 29 (Iowa App.1985). The court's discretion in fixing fees is considerable. *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977). In reviewing an award of fees, we will also consider whether one party was successful in resisting the other's application for increased support and if the party was successful in the application for custody modification. *Phipps,* 379 N.W.2d at 30.

■ The trial court examined both parties' financial condition and ability to pay

the attorney fees. It determined that even after assessing $4,000 in fees to Steven, Janice would have to pay a substantial amount in attorney fees. The court described its own process of analysis in determining the fees to be paid:

> The Court has gone over item by item of the claimed hours worked by the attorney. I looked at every line on this report. Every item claimed is a reasonable amount of time being devoted to each thing claimed. Some parties can exaggerate claims such as this but I find they are entirely reasonable as far as hours worked. I'm not going to first of all award the amount of per hour wage or charge claimed or asked for. I'm going to award attorney's fees of four thousand dollars. That is a substantial amount of attorney's fees. The Court is well aware of the burden that will be placed on Mr. Stanley to pay that amount; however, I don't believe the mother is in any better position to pay the attorney's fees. In fact, I think she will have attorney's fees well in excess of four thousand dollars for hers to pay out.

The trial court examined the parties' respective financial conditions, their income and financial responsibilities, before reaching its conclusion. Furthermore, Steven did not successfully resist Janice's application for increased support. Additionally, Steven was not successful in his application for custody modification. The bulk of the trial proceedings and pretrial preparations appear to have been devoted to the issue of custody raised by Steven in his cross-application for modification, filed two months after Janice's request for increase in child support. In these circumstances, *see Phipps,* 379 N.W.2d at 30, we cannot say that the trial court abused its discretion in awarding $4,000 in attorney fees and $737 in court costs to Janice.

■ Janice claims attorney fees on appeal. Steven did not appeal the amount of child support ordered by the court, only whether it must be paid retroactively. We found no merit to Steven's claim that the trial court erred in its refusal to modify the original decree since he did not show that

there had been a material change in circumstances justifying such a modification.

We have reviewed the attorney's statement with regard to fees on appeal. An award of attorney fees on appeal may be granted based on the parties' respective abilities to pay. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). We have reviewed the record to determine the parties' respective abilities to pay these fees on appeal, including wages, possibilities of second jobs, child support, day care costs, and general expenses. Petitioner shall be allowed the sum of $1,500 in attorney fees in connection with this appeal. Costs of this appeal are assessed to respondent. Judgment shall be entered in the trial court for the amount allowed in this court.

AFFIRMED.